UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:23-cv-80427

MELANI HENKLE,

    *Plaintiff*,

vs.

PALM BAY INTERNATIONAL, INC.,

    *Defendant.*

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Melani Henkle, through her counsel, sues Defendant Palm Bay International, Inc., and in support thereof alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. This Court has original jurisdiction over this civil action pursuant, among other things, to 28 U.S.C. §§ 1331. The Court also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367.

2. Plaintiff, Melani Henkle, ("Plaintiff" or "Henkle") is a resident of Palm Beach County, Florida, and is competent to bring this action.

3. Defendant, Palm Bay International, Inc. ("Palm Bay") is a Florida corporation with a principal place of business in Palm Beach County, Florida, and is *sui juris*.

4. Venue is proper in the Southern District of Florida because the workplace in which the unlawful practices were committed is in the Southern District of Florida.

5. All conditions precedent to bringing this action, if any, have occurred, have been waived, or would be a useless act and are accordingly waived.

6. As it pertains to the issues in this lawsuit, Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission and Florida Commission on Human Rights. The EEOC issued a Notice of Right to Sue on February 16, 2023.

7. Plaintiff is entitled to recover reasonable attorneys' fees and costs under, *inter alia*, 42 U.S.C. § 1988; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* (Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.* ("ADEA"); and the Florida Civil Rights Act of 1992, Chapter 760, Florida Statutes.

8. Plaintiff has retained the undersigned law firm to represent her in this action and promised to pay a reasonable fee.

## RELEVANT FACTS

9. For more than 25 years, Henkle has worked in the wine and spirits industry. In approximately 2013, she began working as a Field Sales Manager for Palm Bay.

10. Palm Bay has a toxic and sexist work atmosphere, where Henkle was repeatedly sexualized, propositioned for sex, made to feel uncomfortable, and treated adversely because of her sex.

11. Ultimately, after numerous sexual episodes, including Henkle repeatedly rejecting her supervisor's sexual advances, she was terminated in favor of a substantially younger man.

12. At Palm Bay, there are market 'work-withs' for all of Palm Bay's brand owners, brand managers, export managers, etc. Anyone representing a winery or brand works the market on a yearly basis. Each manager is from out of town, working the Florida market at least two, and up to four days.

13. Field managers like Henkle are expected to work with these out-of-town managers 24/7. It was expected and required that Palm Bay personnel such as Henkle must be with these managers at all times.

14. This includes working the market during the day, and taking the managers to accounts to support the brands at night.

15. Palm Bay personnel like Henkle were required to treat these managers like owners as they are the representatives of the brands. Palm Bay expected that Henkle show them "love" and "roll out the red carpet." Ultimately, Henkle was treated like she worked for the brand managers and that it was her responsibility to make sure they had a successful market visit.

16. Accordingly, Henkle was expected to join the brand managers to sample customers during the day and support the wines/spirits at night all the while driving the brand managers around.

17. In approximately nine and a half years, Henkle worked with at least 15 brand representatives and only three were female.

### *Patrick Cappelini*
### *Export Manager for Cavit Winery*

18. One brand manager whom Henkle worked beginning in approximately February 2017 was Patrick Cappelini. After a few days of working with him, he became very sexual through text. He sent unsolicited, inappropriate pictures and texts. If Henkle did not respond, Cappelini would become very irritated and would make comments like "I am your boss, Cavit is the largest brand, and Florida is a very important market." These comments made Henkle feel very uncomfortable and obligated to reciprocate. The last text Henkle received from Cappelini was on January 9, 2020, in which he wrote, "Happy new year, Sexy!"

### *Jason Sabo*
### *Vanderpump Wines*

19. Another example of the sexualized atmosphere and pressure at Palm Bay involves Henkle's treatment by Jason Sabo, who is the son-in-law of a Hollywood celebrity, Lisa Vanderpump.

20. On or about August 11, 2017, Sabo was hired as a new brand representative for Vanderpump Rosé. He worked the market and lead the launch of this brand with the distributor.

21. During Sabo's first night in Florida, he and Henkle went to dinner and had wine. Sabo proceeded to invite Henkle to his hotel room with some added

pressure 'that he was considered a celebrity and [Henkle] would be privileged' to go with him. Henkle did go with him.

22. This pressure to engage with Sabo was expected each time he came to the market to work, except for when Lisa Vanderpump or Sabo's wife Pandora Vanderpump Sabo were with him.

23. On or about January 8, 2018, the same scenario took place at the Fort Lauderdale Renaissance. After work all day, Henkle and Sabo had dinner and drinks and Henkle was then pressured to go to Sabo's hotel room. The same took place on or about February 11, 2019 at the North Ft. Lauderdale Hilton Hotel, and on or about October 1, 2019 at the Marker Hotel in Key West.

### *Lunny from McGuigan Wines*
### *Australia June 2019 West Coast Market Visit*

24. On or about June 14, 2019, Henkle was scheduled to work with Lunny from McGuigan Wines on the west coast of Florida (Naples, Tampa). Once again it was the same scenario but with a different supplier manager. Henkle and Lunny worked the market during the day and engaged in dinner account support at night.

25. Henkle was asked to go for a night cap followed up with late night texts insinuating frustration of being alone in a hotel room. This was yet another example of the same pressured situation Henkle was continually experiencing.

*Lester Jiménez*
*Henkle's Direct Supervisor from*
*November 2017 through June 2022*

26. On or about November 9, 2017, there was a meeting in Orlando to meet as a new team under the supervision of Lester Jiménez.

27. Jiménez invited Henkle to come out by the pool to finish the good wine. At the time, Henkle did not know Jiménez did not ask the other field sales manager to come join. Jiménez asked if Henkle wanted to finish up the wine in his room. Henkle declined as it was late, and it was their first meeting together.

28. On or about April 16, 2018 at the Taste of Key West, Jiménez and Henkle worked their first real event together. Jiménez put his hands on Henkle's shoulders in front of people as if she was his property.

29. It was always very uncomfortable for Henkle to be around Jiménez, and she tried to avoid him if they were ever alone.

30. On or about June 19, 2018, Ms. Henkle and Jiménez worked together in Naples. After a long day of visiting/supporting accounts, Jiménez invited Henkle to the pool to finish their wine. Henkle told Jiménez that she did not have a bathing suit. In response, Jiménez told Henkle to put on her workout clothes. Henkle did as she was directed. After some time in the pool, in which Jiménez was uncomfortably close to Henkle, Jiménez said that both of them should go to his room to finish "the good stuff."

31. Jiménez made several attempts to kiss Henkle in the elevator and in his room. Henkle refused to engage and left his room feeling embarrassed and used.

32. Despite Henkle's refusal, Jiménez persisted and tried again the next night. His behavior was completely out of line and inappropriate.

33. Henkle wished that she did not have to work with Jiménez, but he was her boss.

34. On or about December 6, 2018, at a team meeting in Miami, Henkle was pressured into staying out late. Again, Jiménez invited Henkle to his room. As per usual, Jiménez said, 'let's finish the good stuff.' Henkle did not comply and was guilted by it.

35. On or about April 15, 2019 at Taste of Key West, there was another event where Henkle felt like Jiménez treated her like his property, always having his arm on my shoulder.

36. There was no travel for a substantial period of time after the beginning of the Covid-19 pandemic.

37. But then, in March 2021, there was a market push on "GFDs," which was a term Palm Bay used, referring to the phrase "Get it f\*\*\*ing done." The practical reality of assignments termed as GFDs was that Palm Bay ordered that Henkle do whatever it took to get the assignments done. Henkle was told to 'give away the house, make a deal with the devil including me.' Henkle was even told to use knee

pads insinuating she would need them to get the deal done. Henkle took this mean that she should perform oral sex on a client if that is what it took to get a deal done.

38. In May 2021, at the South Beach Food and Wine Festival, after working all day, Henkle and others went to dinner and then to various bars and clubs to support. Jiménez, Henkle, and a new hire got in an Uber to go to the next account. Jiménez sat next to Henkle with his hands on her thighs, rubbing them back and forth. Henkle moved his hands away but as soon as she did, Jiménez asked the Uber driver to stop and pull over. Jiménez got out of the car to vomit in the parking lot. When Jiménez got back in, he asked Henkle to take him back to the hotel after everyone was dropped off at the bar. Henkle told him that she was not going back with him, so he left drunk and frustrated. The rest of the weekend was awkward and uncomfortable, and Jiménez barely spoke to Henkle.

39. On or about September 28, 2021, at a team meeting in Orlando, a similar scenario occurred. There was dinner, lots of drinks, and after-dinner wine. Jiménez invited Henkle to his room. At that point, Henkle went just for one drink, but Jiménez insisted that she stay. Henkle felt pressured to stay until a bottle was finished. However, Jiménez then tried to kiss Henkle, causing her to leave.

40. The next day was a repeat but instead of going out, Henkle chose to leave early so she would not be put in another pressured situation. At 11 pm, Jiménez texted Henkle:

> let's drink 1 more
> 1 last one
> Ok let's watch
> Coming up
> 3…
> Which one
> Bed Yet?
> Not yet no?
> Hello
> Coming over then
> No?
> Lupe
> Bed ya?

41. After the texts, Henkle heard Jiménez knock at her door. She kept quiet but he continued to knock. Henkle was frightened at this point, and she knew Jiménez was very drunk. She finally texted him that she had just woken up.

42. Jiménez's attitude toward Henkle then started to change and he was very short with her on several occasions.

43. Another incident occurred in December 2021, at a team meeting in Miami. After dinner and drinks, Henkle went back to her room to get away from Jiménez. However, he called her to get back down to the lobby and be a team player. Henkle got dressed and went down where Jiménez continued to buy her drinks and try one last time to get her to go to his room. Henkle dismissed him again.

B THE BURTON FIRM

44. In April 2022, at Taste of Key West, Jiménez had Henkle stay an extra night to work the market after the event. Jiménez had made sure the two of them were in the same place. They worked together, and at the end of the day, Jiménez invited Henkle to his room for drinks. Fortunately, there was another female wine supplier in his room, so Henkle was not obligated to stay and drink. This was the last time Henkle and Jiménez were together in person. He was extremely short with Henkle and very authoritative.

45. At that time, Henkle and others were submitting their yearly reviews which were supposed to be reviewed by managers and discussed together. Everyone on the team received their review but Henkle.

46. Then, on June 1, 2022, Henkle was let go.

47. Henkle was called into a meeting with a new, much younger, Field Sales Manager, Nick Sledge, along with their boss, Jiménez. Even though Sledge was hired before Covid, he was still considered new since they had not been working in the field.

48. Palm Bay cut Henkle out of her territory, left her to call on a few select accounts, and gave everything else to Sledge.

49. Since Sledge's new position, he has had several complaints from the distributor and various accounts. Sledge and Henkle worked a meeting in April where Sledge was genuinely concerned that he was on the chopping block ready to be terminated. Henkle even thought that Sledge was getting terminated because he had

other instances where he acted unprofessionally, but the "boys club" supported him and backed him up and eventually Palm Bay let Henkle go instead.

50. Henkle is a 53-year-old, female Pacific Islander. She has great relationships with the distributors and accounts. By contrast, Sledge is a significantly younger, good looking white male with a bad reputation and several complaints.

## COUNT I

### SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

51. Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 50 as if fully set forth herein.

52. Plaintiff belongs to a protected class, due to her sex.

53. Palm Bay unlawfully discriminated against Plaintiff by creating an intimidating, hostile, and/or offensive work environment and by taking adverse employment actions against her due to her sex.

54. Plaintiff suffered as a result of the intimidating, hostile, and/or offensive work environment, and the adverse employment actions.

55. Palm Bay treated similarly situated male employees more favorably than Plaintiff.

56. Palm Bay had no legitimate business reason for its discriminatory behaviors and actions against Plaintiff.

57. Palm Bay had no legitimate business reason for its intimidating, hostile, and/or offensive work environment or for taking adverse actions against Plaintiff.

58. Alternatively, if Palm Bay did have any legitimate business reason(s) to take any of the aforementioned conduct, then discrimination was at least an additional reason for the aforementioned intimidating, hostile, and/or offensive work environment and/or adverse actions against Plaintiff, and Palm Bay, at best, possessed mixed motives.

59. In discriminating against Plaintiff, Palm Bay acted with malice and reckless disregard for Plaintiff's federally protected rights.

60. As a result of the Palm Bay's unlawful discrimination, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff Melani Henkle demands judgment against Defendant Palm Bay International, Inc., for all allowable remedies (equitable and/or at law) pursuant to Title VII of the Civil Rights Act of 1964, all allowable compensatory damages, liquidated damages, damages for emotional distress, mental anguish, and loss of dignity; and punitive damages; attorneys' fees; taxable costs allowable by law; prejudgment and post-judgment interest; and such other and further relief as this Court deems just and proper.

## COUNT II

### SEX DISCRIMINATION IN VIOLATION OF
### THE FLORIDA CIVIL RIGHTS ACT OF 1992

61. Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 50 as if fully set forth herein.

62. Plaintiff belongs to a protected class, due to her sex.

63. Palm Bay unlawfully discriminated against Plaintiff by creating an intimidating, hostile, and/or offensive work environment and by taking adverse employment actions against her due to her sex.

64. Plaintiff suffered as a result of the intimidating, hostile, and/or offensive work environment, and the adverse employment actions.

65. Palm Bay treated similarly situated male employees more favorably than Plaintiff.

66. Palm Bay had no legitimate business reason for its discriminatory behaviors and actions against Plaintiff.

67. Palm Bay had no legitimate business reason for its intimidating, hostile, and/or offensive work environment or for taking adverse actions against Plaintiff.

68. Alternatively, if Palm Bay did have any legitimate business reason(s) to take any of the aforementioned conduct, then discrimination was at least an additional reason for the aforementioned intimidating, hostile, and/or offensive work environment and/or adverse actions against Plaintiff, and Palm Bay, at best, possessed mixed motives.

69. In discriminating against Plaintiff, Palm Bay acted with malice and reckless disregard for Plaintiff's statutorily protected rights.

70. As a result of the Palm Bay's unlawful discrimination, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff Melani Henkle demands judgment against Defendant Palm Bay International, Inc., for all allowable remedies (equitable and/or at law) pursuant to the Florida Civil Rights Act of 1992, all allowable compensatory damages, liquidated damages, damages for emotional distress, mental anguish, and loss of dignity; and punitive damages; attorneys' fees; taxable costs allowable by law; prejudgment and post-judgment interest; and such other and further relief as this Court deems just and proper.

## COUNT III

### AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

71. Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 50 as if fully set forth herein.

72. Plaintiff belongs to a protected class, due to her age.

73. Palm Bay unlawfully discriminated against Plaintiff by creating an intimidating, hostile, and/or offensive work environment and by taking adverse employment actions against her due to her age.

74. Plaintiff suffered as a result of the intimidating, hostile, and/or offensive work environment, and the adverse employment actions.

75. Palm Bay treated similarly situated male employees more favorably than Plaintiff.

76. Palm Bay had no legitimate business reason for its discriminatory behaviors and actions against Plaintiff.

77. Palm Bay had no legitimate business reason for its intimidating, hostile, and/or offensive work environment or for taking adverse actions against Plaintiff.

78. Alternatively, if Palm Bay did have any legitimate business reason(s) to take any of the aforementioned conduct, then discrimination was at least an additional reason for the aforementioned intimidating, hostile, and/or offensive work environment and/or adverse actions against Plaintiff, and Palm Bay, at best, possessed mixed motives.

79. In discriminating against Plaintiff, Palm Bay acted with malice and reckless disregard for Plaintiff's federally protected rights.

80. As a result of the Palm Bay's unlawful discrimination, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff Melani Henkle demands judgment against Defendant Palm Bay International, Inc., for all allowable remedies (equitable and/or at law) pursuant to the Age Discrimination in Employment Act, all allowable compensatory damages, liquidated damages, damages for emotional distress, mental anguish, and loss of dignity; and punitive damages; attorneys' fees; taxable costs allowable by law; prejudgment and post-judgment interest; and such other and further relief as this Court deems just and proper.

## COUNT IV

### AGE DISCRIMINATION IN VIOLATION OF
### THE FLORIDA CIVIL RIGHTS ACT OF 1992

81. Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 50 as if fully set forth herein.

82. Plaintiff belongs to a protected class, due to her age.

83. Palm Bay unlawfully discriminated against Plaintiff by creating an intimidating, hostile, and/or offensive work environment and by taking adverse employment actions against her due to her age.

84. Plaintiff suffered as a result of the intimidating, hostile, and/or offensive work environment, and the adverse employment actions.

85. Palm Bay treated similarly situated male employees more favorably than Plaintiff.

86. Palm Bay had no legitimate business reason for its discriminatory behaviors and actions against Plaintiff.

87. Palm Bay had no legitimate business reason for its intimidating, hostile, and/or offensive work environment or for taking adverse actions against Plaintiff.

88. Alternatively, if Palm Bay did have any legitimate business reason(s) to take any of the aforementioned conduct, then discrimination was at least an additional reason for the aforementioned intimidating, hostile, and/or offensive work environment and/or adverse actions against Plaintiff, and Palm Bay, at best, possessed mixed motives.

89. In discriminating against Plaintiff, Palm Bay acted with malice and reckless disregard for Plaintiff's statutorily protected rights.

90. As a result of the Palm Bay's unlawful discrimination, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff Melani Henkle demands judgment against Defendant Palm Bay International, Inc., for all allowable remedies (equitable and/or at law) pursuant to the Florida Civil Rights Act of 1992, all allowable compensatory damages, liquidated damages, damages for emotional distress, mental anguish, and loss of dignity; and punitive damages; attorneys' fees; taxable costs allowable by law; prejudgment and post-judgment interest; and such other and further relief as this Court deems just and proper.

## COUNT V

### RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

91. Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 50 as if fully set forth herein.

92. Plaintiff engaged in statutorily protected activity when she informed her supervisor at Palm Bay of her refusal to engage in sexual or sexualized activity and conduct.

93. After Plaintiff engaged in such statutorily protected activity, she was subjected to adverse employment actions.

94. Plaintiff's refusal to engage in sexual or sexualized activity and conduct is causally connected to Palm Bay's retaliatory adverse employment actions against her.

95. As a result of Palm Bay's unlawful retaliation, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff Melani Henkle demands judgment against Defendant Palm Bay International, Inc. for all allowable remedies (equitable and/or at law) pursuant to Title VII of the Civil Rights Act of 1964, all allowable nominal and compensatory damages, liquidated damages, damages for emotional distress, mental anguish, and loss of dignity; and punitive damages; attorneys' fees; taxable costs allowable by law; prejudgment and post-judgment interest; and such other and further relief as this Court deems just and proper.

### COUNT VI

### RETALIATION IN VIOLATION OF
### THE FLORIDA CIVIL RIGHTS ACT OF 1992

96. Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 50 as if fully set forth herein.

97. Plaintiff engaged in statutorily protected activity when she informed her supervisor at Palm Bay of her refusal to engage in sexual or sexualized activity and conduct.

98. After Plaintiff engaged in such statutorily protected activity, she was subjected to adverse employment actions.

99. Plaintiff's refusal to engage in sexual or sexualized activity and conduct is causally connected to Palm Bay's retaliatory adverse employment actions against her.

100. As a result of Palm Bay's unlawful retaliation, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff Melani Henkle demands judgment against Defendant Palm Bay International, Inc. for all allowable remedies (equitable and/or at law) pursuant to the Florida Civil Rights Act of 1992, all allowable nominal and compensatory damages, liquidated damages, damages for emotional distress, mental anguish, and loss of dignity; and punitive damages; attorneys' fees; taxable costs allowable by law; prejudgment and post-judgment interest; and such other and further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

101. Plaintiff demands a trial by jury for all issues so triable.

> Respectfully submitted,
> *Counsel for Plaintiff Melani Henkle*
>
> **THE BURTON FIRM, P.A.**
> 2875 N.E. 191st Street, Suite 403
> Aventura, Florida 33180
> (305) 705-0888
> pleadings@theburtonfirm.com
> rb@theburtonfirm.com
> mburton@theburtonfirm.com
>
> By: /s/ Marc A. Burton
> Marc A. Burton     Fla. Bar No. 95318
> Richard J. Burton  Fla. Bar No. 179337